AUGUST SCHLEGEL

*v.*

CHARLES J. BOTT.

[Decided June 19th, 1922.]

1. Where a lease contained a clause requiring a tenant to make a deposit, and an option was granted therein to a tenant to purchase which provided that upon the exercise of the option the deposit should be applied upon the purchase price, the landlord, by letting the tenant into possession without requiring the deposit to be made, and receiving rent from the tenant in accordance with the terms of the lease, cannot refuse to convey in pursuance of an exercise by the tenant of the option to purchase on the ground that the contract was broken by failure to make the deposit.

2. Failure to perform a particular provision of a contract does not render the contract void as a whole, but merely voidable at the option of the party for whose benefit the condition was inserted, and if such party does not manifest his intention to annul the contract by some act done or notice given within a reasonable time after the failure occurs, he is presumed to have elected to consider the contract in force.

On appeal from a decree in chancery advised by Vice-Chancellor Griffin, whose opinion is reported in *93 N. J. Eq. 330.*

*Mr. Harlan Besson,* for the appellant.

*Mr. J. Emil Walscheid,* for the respondent.

The opinion of the court was delivered by

GUMMERE, CHIEF-JUSTICE.

The bill in this case was filed by Schlegel to compel the execution of an agreement for the sale of land in the town of Union. The case came on to be heard before the vice-chancellor upon the bill, answer and proofs, and a decree for specific performance was advised in accordance with the prayer of complainant's bill. From this decree the defendant has appealed.

On the 17th day of April, 1917, Bott, being the owner of the premises involved in the present litigation, executed an indenture of lease to Schlegel for a term of five years, to commence on the 1st day of September then next, at a yearly rent of $3,000 for the first two years and $3,300 for the remainder of the term, to be paid in monthly installments. The lease also provided that during the continuance thereof the lessee should pay the taxes assessed against the property. It also contained a further provision that the lessee should have the privilege of making alterations and changes in and about the demised premises; and, further, that before the lease should become operative he should deposit with the lessor the sum of $1,500 as security for the surrender of the premises at the expiration of the lease in the state and condition provided therein, unless, during the running thereof, he should exercise an option to purchase the premises in

accordance with the terms of a written agreement entered into between the parties on the same day upon which the lease was executed, in which case this sum of $1,500 should be credited upon the purchase price.

The agreement for sale just referred to required the lessor to convey the premises in fee-simple to the lessee at any time during the life of the indenture of lease that such conveyance might be demanded by the latter, the consideration for the conveyance being $46,000, to be paid in accordance with the terms specified in the agreement.

Upon the day on which these two instruments were executed a portion of the premises was in the possession of one Tonjes, who conducted a saloon business there; another portion was occupied by a man who was carrying on a butcher business therein, and the remaining part of the premises was in the possession of a bootblack. These three parties were in occupation as tenants of Bott.

Shortly after the execution of the lease and agreement for sale, and some months before the beginning of the term of the lease, the complainant, by arrangement with Tonjes and with the consent of the defendant, entered into possession of the part of the premises occupied as a saloon and proceeded to make alterations therein for the purpose of adapting it to the carrying on of a hardware business which he proposed to establish there; and during the time of his occupation thereof, and up to the beginning of the term of the lease, he paid Bott $125 per month for the same. On September 1st, 1917, the complainant began the payment of the monthly installments of the rent called for by the lease, and at the same time the defendant instructed the other tenants—that is, the butcher and the bootblack—to pay the rent which accrued under their respective leases to the complainant, and this was done each month until June, 1920. During all of this time the complainant continued to pay the monthly installments called for by the lease, and also paid the annual taxes assessed against the property. On the 1st of June, 1920, in the exercise of the right which he conceived was vested in him under the contract for sale, the complainant demanded a

conveyance of the property from the defendant, tendering himself ready to pay the purchase-money upon the delivery of the deed. The defendant refused to comply with this demand upon the ground that the lease which was executed in 1917 had never become operative, because of the fact that the complainant had not deposited with him the sum of $1,500, as required thereby; that, consequently, he, the complainant, was in possession, not under the lease but as a mere tenant from month to month; and that, as the agreement for the sale was only binding in case the lease had become operative, defendant was under no obligation to make the conveyance.

The requirement of the lease appealed to by the defendant was inserted therein solely for his benefit. He had a right, if he had seen fit, to insist upon its performance as a condition precedent to the entry upon the premises by the complainant under the lease; but he also had a right to waive that performance and to accept the complainant as a tenant under the lease, notwithstanding the failure of the latter to deposit the $1,500. He made no objection to the entry of the complainant upon the whole premises as a tenant, notwithstanding his failure to make the deposit. He permitted him as tenant to make the changes and alterations in the premises which the lease authorized. He instructed the parties in possession of the butcher shop and the bootblacking establishment to recognize the complainant as their landlord. He for two years accepted from him the monthly installments of rent called for by the lease, and permitted him to pay the annual taxes upon the demised premises in accordance with the requirement of that instrument. All this he did without even a suggestion to the complainant that the rights which he was enjoying as tenant were not those granted by the written lease.

The rule is settled that whenever a party to a contract has consistently acted in such a way as to indicate to his co-contractor that he does not intend to hold the latter to a particular provision in the agreement, he is to be taken to have waived his right to enforce that provision. The whole agreement does not become absolutely void for failure of performance of a particular

provision in it. It is merely voidable at the option of the party for whose benefit it has been inserted. If he desires to exercise that right and annul the contract, he must manifest his intention to do so by some act done or notice given within a reasonable time after the failure occurs; and, in the absence of such manifestation, he is to be presumed to have elected to consider the contract in force. *Grigg* v. *Landis, 21 N. J. Eq. 494,* and cases cited.

The defendant, having by his conduct treated the lease as an existing contract between himself and the complainant, and having thereby waived his right to declare the lease inoperative *ab initio,* cannot thereafter be heard to assert that the lease never had vitality and that the lessee named therein was not in occupation of the leasehold estate by virtue of its provisions.

We concur, therefore, in the view of the vice-chancellor that, under the circumstances of this case, the failure of the complainant to make the $1,500 deposit called for by the lease, constituted no bar to his right to demand and receive a conveyance of the premises at any time during the continuance of the term created thereby.

The decree under review will be affirmed.

*For affirmance*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER, ACKERSON, VAN BUSKIRK—14.

*For reversal*—None.